chnology Insurance. Good morning. Good morning. May it please the court, John McKenna, from Labatt, Balkin, Colavita and Contini on behalf of the appellant SPARTA Insurance Company. This is a dispute between two sophisticated insurance companies as to which policy should be primary for a vital injury claim that occurred at a construction site. As typically seen in insurance situations, when the lawsuit was brought by Mr. Price, he sued South Nassau Community Hospital, where the work was being done, as well as a contractor, Stassi Brothers. Stassi Brothers Insurance Technology then tendered coverage under AI status, additional insurance status, as well as contractual indemnification to SPARTA Insurance Company, who insured the plaintiff's employer road work. In 2013, SPARTA accepted technology's tender in accordance with the terms and conditions of the policy in the contract, which we have argued is a reservation of rights.  I can see that it could have been more thorough. That's always the case. I mean, you have a contract, and everything is in accord with the terms and conditions of the contract. It doesn't really tell anybody anything. I concede, Your Honor, that it could have been more thorough. But a year later, it did become more thorough. Not only was there no reservation of rights, but when they were written to afterwards saying, I appreciate that you accepted this without reservation, there was no response to that letter. Correct, Your Honor, and we're not disputing that. And the adjusting process, the handling of this could have been clearer, could have been more thorough. Can you even reserve rights against another insurer or only against an insured? Well, that's a good argument. That's an interesting question, Your Honor, because we don't believe the crux of this appeal, the crux of this claim, really doesn't have to do with the reservation of rights. Okay. Can we then put that aside? Well, I'm not conceding the fact that there wasn't a reservation. I don't understand. You started by saying there was a reservation of rights. Correct. So that's why I asked, can there be a valid reservation of rights as against another insurer as distinguished from an insured? I don't think it's necessary, Your Honor, and that's what I was saying. Well, then you say it's not necessary. That sounds like we don't have to worry about reservation of rights at all. The district court did, though, Your Honor. But you're here arguing for a reversal. Correct. So I'm trying to understand, do we need to determine whether there was a valid reservation of rights or, as you now stand there and say it, is that irrelevant to this appeal? Well, I think the appeal has many different levels. No question. But is reservation of rights relevant or not? Assuming that, as we have argued, equitable estoppel does not apply between two insurance carriers, when Sparta, in this case, is not attempting to disclaim coverage, then the reservation of rights doesn't matter. Because if there is no equitable estoppel between these two sophisticated insurance companies, then the request for reallocation for technology to take the primary role in defense and indemnity could have been asserted at any time. And if there is equitable estoppel, are you saying then we have to reach the question whether rights were reserved? Well, I think then one of our defenses would be that we did reserve rights. And in that case, we would need to know, can there be a reservation of rights against an insurer? I don't think there's any prohibition against it. But, again, our first argument is that it's not unnecessary. When you're dealing with New York law, which this case is subject to, the prompt disclaimer of coverage statute is insurance law 3420. And that's if there's a bodily injury claim and an insurance company is put on notice, they have to provide a prompt disclaimer or they may lose that ability to raise that coverage defense. Your Honor, I think maybe this will answer your question. Under 3420, there's no requirements between two insurance companies to promptly disclaim coverage. And, again, Sparta Insurance Company has not disclaimed coverage. We're just seeking reallocation. Well, if you're right, then if Sparta, having assumed the defense without asserting the other insurance clause and bringing in technology, if Sparta had hired a moron to be the lawyer defending the claim and the claim had blown up into a gigantic judgment, wouldn't you say the technology would have been prejudiced? And, indeed, through Stassi Brothers, it's insured. But that's not what happened here. The attorney that technology had initially hired continued to defend the case. So it's not as if an inadequate attorney was retained. No, it isn't as if. I agree with you. That's not this case. But I don't see how you can argue that there's no such thing as a stopple between what you call insurance companies. But the insurance companies are actually there representing the interests of their insurance. And so I'm not sure you can tease the insurance companies apart from their insurance. Well, and I think to that point, there is a dispute between, in New York law, as I see it. Second Department has ruled that there is no equitable stopple between carriers when reallocation or contribution is being sought from another carrier. If you're seeking a contribution, let's say 50% contribution, is that because technology also has another insurance clause that makes it access to any other available insurance? Our argument is that the SPARTA policy deems it, its other insurance clause deems it to be access to technology's own coverage. Does technology have a similar clause? Their clause says, no, they don't have a similar clause. Their clause says we're access if they're named insured STASI is provided with primary additional insured coverage. Our argument would be the SPARTA policy does not provide primary additional insured coverage, therefore SPARTA is access. But there is a real possibility that this could be found if we got to the point, which the district court didn't, that it's a 50-50. Did technology take on the owner, the property owner, as an additional insured? They didn't. They were tendered to, but then they passed that tender. No, I mean, did their policy to STASI brothers take on SNCH, the owner, as an additional insured? I think it would, yes. I think it would. Can I come back to the state statute, the 3420, which you say applies to this case? It does not apply to this case because this is a case between two insurance companies. Right, so you're not relying on it. Not at all, Your Honor. I will save my... Well, you've reserved rebuttal. Yes. So we shall hear you then, Mr. McKenna. Good morning, Your Honors. My name is Judy Schametz. I am with Wilson Elser. I represent the FLE. I want to just make a correction of the record because it is, I think, very relevant to our discussion. Counsel has repeatedly stated here and in the briefs that the tender which SPARTA accepted came from technology. That is false. Page 61, page 519 of the record, the tender which SPARTA received was from its own insureds. It was from STASI and it was from SNCH. And that is where 3420 comes in because a tender from its insured, additional insured coverage, but it is its insured, triggers its obligation, triggers SPARTA's obligation to respond to that tender under 3420, which they did and they did not reserve, at which point they locked in the following scenario. They accepted a tender which was for primary coverage. Keep in mind here they don't get to choose the nature of the tender. They get to choose the nature of their response. The tender was for primary coverage as additional insureds. That is the tender which they accepted without any kind of a serious reservation of rights. And I'm happy to talk about that, but there's no specificity at all to what they are now claiming was a reservation. Would they have had to do that immediately or could they take- They can't take it. Because somebody is out there and in peril and you take on their defense and you look at the policies and you- Under New York law it does depend somewhat on the facts. They did a supplemental, what they now call a supplemental reservation- When was that sent? Almost a year later, but this is the thing. Nothing happened in between the time of their initial acceptance of the tender and the time that they realized they did it wrong. Did SPARTA have access to the technology policy? SPARTA knew that there was a technology policy and did not request the technology policy for over a year. What they knew when they accepted the tender was that the complaint states that there was active negligence by both of its now tendering parties, so both SNCH and STASI. It knew, because their claims notes reflect, that they were insured by technology, and in fact it was in communication with counsel who had been retained by technology, at which point SPARTA says, no, no, we'll pick it up, and they do, and they direct the defense away from their main insured, which is their right to do, because ultimately it's all going to come back to them, and that makes sense. They avoid having to hire second counsel. They avoid all of the cost of that, but in the process of doing that, what they're doing to their additional insured is putting them into a corner where they can no longer timely commence. Getting second counsel, but your adversary said that technology insurance retained counsel for STASI as well. It did, but what they would have to have done, what technology's plan had been, was to third party in the employer. The employer is the primary insured for SPARTA, so if that third party action had been commenced, then what SPARTA would have been stuck with is having two sets of lawyers, one for SNCH. Is that the complaint that was drafted? Exactly. That is the third party complaint that was drafted, and they said to SPARTA, listen, this is the way we're going unless you're going to pick up, and SPARTA says, no, no, we'll pick up, and the third party action has never commenced. They are very actively, and that is their right, directing the litigation away from that third party suit, and that's fine, but what they can't do is reap the benefits of that and say equity doesn't apply. Excuse me. The third party suit would have been a suit by the owner. And the GC. And the general contractor against Roadwork. Against the subcontractor who can't be sued by the plaintiff because of the employment relationship. So this is a fairly common scenario when you either third party them in or you don't. A lot of the times you don't because they're insured by the same company, and, again, I have no issue with that other than to say that under New York law it is absolutely settled under Liberty, that there is, of course, equity applies in between insurance companies. So since technology provided counsel to STASI, how can it be said that STASI or technology suffered prejudice by being represented by counsel selected by SPARTA? I'm not saying counsel was bad. I'm saying the litigation plan was bad. If they are going to be represented in a way that directs them away from the third party action, where they are now is they can't bring in the third party action. That has very significant cost and very significant risk to them. Because, of course, they can sue still the subcontractor, but they have to do it in a separate suit. And that is, A, enormously costly, and, B, they face the risk of inconsistent verdicts because they have statutory liability in the main suit. So you're saying that the, as it were, failure to disclaim or to seek contribution changed the dynamic of the litigation in a way that would prejudice your client if it were undone? Absolutely. That's not the way we were going to go. They assumed a defense. They went a different way. That's their right. That's fine. But they can't say now that equity should not apply. After having played all their cards the way that they did, they can't step away from it and say, here, we switched up the deck. You can have it back. Are you making a waiver argument? They waived the right to contribution? Effectively, they have. When they responded under 3420 and they assumed without reservation, then at that point technology, having let them direct to the defense, relied on that acceptance to its detriment. So when they didn't reserve to the insured, then after that, they were locked into their position of being the primary insurer, which was the nature of the tender. So if we disagreed with you about promissory estoppel, you would still argue there's been a waiver of the right to contribution? Yes, Your Honor, because, again, it's not that the 3420 duty runs to them. It's that the tender came from their insured. So that's critical, because they don't have to respond to another insurer's tender the same way. But once they have a 3420 duty to respond to their insured, that locked in their position. They don't have they can't talk out of both sides of their mouth. They can't say to their insured, we're not reserving, we're representing you, primary, all of those things, and at the same time say to another insurer, I know I said to them that we're going to be primary, but we're not. At some point, somebody's going to have to tell the insured that is the functional equivalent of now disclaiming against your insured, although you're doing it the long way around, but that is where you're going. The trial in the underlying case seems to be perennially on the verge of being tried. Where is it? There are procedural issues. There was a bankruptcy by another insurer. Then there was a stay because of all of this. But let me say this. The note of issue has been filed. The third-party action, there is no New York court that would allow them to do that now. They're going to have to do that in a separate case if they ever have to go down that road. If they have to go down what road? I'm sorry. If they ever want to look for contribution towards the plaintiff's employer, that can no longer be done. In the context of a third-party suit within the underlying action, it will have to be done separately, and that precisely is the cost and the risk that we're talking about when we're talking about prejudice. Unless there are other questions, Your Honor, I'm happy to rest on my brief. Thank you. Thank you, Your Honors. Just quickly, the tender was on behalf of Gallagher Bassett. Gallagher Bassett is the evidence. Technology uses Gallagher Bassett's existence to show Sparta's knowledge that technology existed. Gallagher Bassett was technology's representative, agent. The tender came from technology's agent. On behalf of the insured, but from their agent. It came from the insurance company. So I would disagree. But on behalf of the insured? Is that what you just said? Well, but not from them. But on their behalf. But really for the benefit of technology, to get this claim off of technology's policy. I thought you said it came on behalf of the insured. Well, technology's not a party to the lawsuit, so they couldn't have tendered it. It did come on behalf of the insured. They asked for Sparta to assume the defense of Stasi and South Castle. If it came on behalf of the insured, did that trigger the statute? I would still argue no, that 3420, because this is still a claim between two insurance companies. This is a claim as to which insurance company is primary and which is excess. This happens every day of the week. If an agent on behalf of an insured contacts the insurer, doesn't that trigger the statute? No, I disagree. I think Zurich versus Liberty explains that. I think we do argue that in our brief, and I don't think this becomes an issue of 3420 applying. In conclusion, we hear a lot of complaints about inability to file a third-party complaint and that discovery is now closed. But remember, technology was approached back in 2015 to address this issue. Discovery didn't close in the underlying action until 2016. The underlying action still has not been tried. I don't see how technology could be found to have been prejudiced by this. If an agreement was reached, that third-party complaint could have been brought. So I have a hard time accepting their arguments that— You're saying if agreement had been reached, it could have been filed. Well, that's true of everything. But we did not approach them when discovery was closed. We did not approach them at the eve of trial. We approached them while discovery was still underway. This third-party complaint could have been filed if technology did what we think they should have under their obligations under the policy. Thank you. Thank you. Thank you both. Was there a decision?